AYRES, Judge.
This is a compensation suit in which plaintiff alleges he sustained accidental injuries while in the course and scope of his employment with Kraft Food Company, rendering him permanently and totally disabled. He, therefore, seeks recovery of the statutory maximum compensation prescribed for such disability. From an adverse judgment plaintiff appeals.
The issues are (1) whether plaintiff sustained an accident and (2) whether plaintiff experienced an aggravation of a preexisting condition denominated epiphysitis.
Plaintiff was employed at defendant’s plant and warehouse in Shreveport, Louisiana, as a common laborer for approximately four years prior to October 22, 1956, when he claims to have sustained accidental injuries to his back. The nature of plaintiff’s duties was handling, lifting and loading heavy containers of groceries and other food products onto trucks. Other essential averments of plaintiff’s petition are set forth in paragraphs numbered 8 and 12, and are as follows:
“8.
“That for some time immediately prior to and leading up to October *779 22, 1956, for several days prior thereto, plaintiff began noticing trouble with his back, but tried to keep on working; however, on October 22, 1956, he could go no further and was forced to discontinue his work and seek medical advice.”
"12.
“That the plaintiff’s back constantly aches and he has pains in his lower back, hip and leg and has been advised and therefore alleges upon information and belief that the constant lifting and carrying and handling of heavy cartons as set forth hereinabove has injured his back by either causing or aggravating or contributing to an epi-physitis in the mid and upper lumbar region with hypertropic changes resulting therefrom tearing of the intever-tebral spaces and minimal posterior lipping with projection of the lipping posteriorally on these bodies into the neuro canal, with strain being superimposed on this condition causing total disability for the. performance of any strenuous manual labor, together with a hypertropic arthritic condition of the sacroiliac joints bilaterally.”
It was then alleged “that the said injury was an accident” within the intendment of the Workmen’s Compensation Statute.
According to the medical experts who testified in the case, epiphysitis is defined as a disturbance of the growth center of a bone due to an impairment, for some unknown reason, of the blood supply and is characterized as a developmental anomaly of adolescent years, contradistinguished from a congenital anomaly in that the latter is a condition existing at birth. When an adolescent with an epiphysitis reaches maturity, the growth center fuses to the bone and closes, leaving probably some irregularity or a joint incongruity or some arthritic change. There then remains the residuals of epiphysitis or the growth disturbance of childhood and may be characterized as a healed epiphysitis, one having run its course.
In the instant case, the anomaly appeared in the lumbar area of plaintiff’s back, described by Dr. Willis J. Taylor, an orthopedic surgeon appointed by the court as an expert in this case, as either a vertebral epiphysitis or a vertebral chondritis or os-teochondritis. The distinction between the' two is that in the latter only one vertebra is involved, wherein in the former two or more vertebrae may be involved. More specifically, the area involved in the instant case consists of a healed epiphysitis between the second and third lumbar vertebrae, with the same condition, but to a lesser degree, between the first and second lumbar vertebrae. The vertebral space between the second and third lumbar vertebrae was narrowed and broadened with an irregularity of the anterior-superior margin of the third vertebra and an apparent spurring of the anterior-superior margin of the second vertebra. Slight calcification was. shown in the anterior spinal ligament between the lumbar vertebrae 1 and 2 and between 3 and 4, which was likewise characterized by Dr. Taylor as an old healed adolescent vertebral epiphysitis.
The consensus of opinion of Dr. Donald F. Overdyke, Jr., Dr. T. M. Oxford and Dr. Willis J. Taylor, all orthopedists, is that the aforesaid condition of the lumbar area of plaintiff’s back is an anomaly of adolescence, never extending beyond maturity, and generally not beyond the 18th year.
Plaintiff, however, predicates this claim upon an alleged aggravation of the epi-physitis produced or brought about by his constant heavy lifting during his employment. The most favorable aspect to this contention is that the pre-existing condition rendered plaintiff more readily susceptible to injury than if he did not have that condition. The consensus of the medical testimony is that this pre-existing condition was not affected, changed, worsened or aggravated by plaintiff’s employment or *780 from a strain of plaintiff’s back, which ’he may have suffered and from which he had recovered.
The substance of the testimony of Dr.-Alpheus Hiller, Jr., a general practitioner, who treated plaintiff beginning in October, 1956, is that plaintiff had a pre-existing developmental defect which had been aggravated but that the aggravation had long since ceased. The Doctor testified:
“Q. Doctor, in a nutshell, is not the sum and substance of your testimony to the effect that Mr. Clement had an epiphysitis at or before age twenty, and that while working he suffered a sprain to his back, that he is now well from the sprain, but he still has the epiphysitis? A. That is correct.
., “Q. I mean, that is the whole meat in the coconut ? A. That is right.
“Q'. In other words, he had a condition, he suffered a sprain like anybody else would do, he got well from the sprain, and he still has the condition? A. That is right.
“Q. And the type of work he was doing had no connection with the epi-physitis ? A. That is right.
“Q. Might have caused the strain? A. Right.
“Q. Might not have? A. Right.
“Q. That is based on what he told you? A. That is right.
■ “Q. But, if it did cause it, he is well from it? A. That is right.
“Q. And at the present time, there is no reason he can’t do hard manual labor? A. That is right.”
Dr. Oxford, testifying for defendant, found no evidence of aggravation of residual epiphysitis and was of the same opinion that plaintiff was able to do the same character of work at the time of the trial as he was doing prior to October, 1956. There was no finding by him that the cause of the defect or any aggravation of it was traceable to plaintiff’s employment. He testified:
“Q. * * * £>¡(1 yOU gn(j ¡n your examination of June 17, 1957, or your previous examination any evidence of aggravation of residual epiphysitis? A. No.
“Q. Secondly, in your opinion, this man is at the present time able to do the same type of work he was doing in October of 1956? A. I think so; yes.”
Dr. Overdyke, who testified on behalf of plaintiff, gave this testimony:
“Q. In other words, we have ruled out the fact that the work could have caused his trouble in his back. A. I see. Yes, sir, I am with you; yes, sir.
“Q. We have definitely ruled that out ? A. Right.
“Q. We can throw that out? A. Right.
“Q. And there is some possibility in your opinion, then, that the work might have aggravated it and caused him to have some pain now? A. Yes, sir.
“Q. It is just as likely,’ is it not, Doctor, that his everyday living could have aggravated it? A. That is correct, sir.
“Q. Can we, then, use these words, Doctor, that ‘there exists a speculative or conjectural possibility of casual relationship or causal relationship between the plaintiff’s employment and his disability’? A. Right.
“Q. That would sum it up in a nutshell ? A. Right.
“Q. That is your testimony? A. Right.”
Dr. Taylor testified that the X-ray films taken in October, 1956, in the course of *781 Dr. Hiller’s examination and treatment portrayed the same condition as shown by later films, from which it was concluded that the condition predated plaintiff’s complaints. As to plaintiff’s ability to do manual labor, the Doctor testified:
“Q. Now, then, Doctor, as a result of your examination, what would be your opinion as to this man’s ability to perform hard manual labor now as compared with his ability to perform hard manual labor five years ago? A. I see no reason why he couldn’t. If he could do it then, he could do it now.
“Q. In other words, you find nothing of recent origin, speaking of recent in the last five years, to have changed his condition? A. That is correct.”
Thus, the preponderance of the medical evidence is there was no aggravation of the epiphysitis, which had long since healed; that if there were any aggravation at all, which was generally discounted, such aggravation had long since ceased, and that plaintiff had recovered from any sprain which he may have experienced in his back and there was no residual disability from the sprain at the time compensation was discontinued.
From the allegations quoted herein-above, it is noted that plaintiff did not allege, and certainly he did not succeed in establishing, the occurrence of any definite and certain accident as the basis for his claim. On the evidence contained in the record itself, we think plaintiff has utterly failed to establish either an accident in the course of his employment which resulted in disability or an aggravation of any pre-existing condition. The evidence establishes that plaintiff had fully recovered from any disability that may have resulted from any strain he may have sustained and for which he was paid compensation.
Finding no error in the judgment appealed, it should be, and it is hereby, affirmed at plaintiff-appellant’s cost.
Affirmed.